**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KIM RENEE CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-CV-325-TCK-PJC |
| ) | |
| VENI VIDI VICI, a Foreign Limited ) | |
| Liability Company, d/b/a/ LITTLE ) | |
| CAESARS PIZZA, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion for Summary Judgment (Doc. 15). For the reasons explained below, this motion is granted.

**I.     Background**

Defendant hired Kim Carter ("Plaintiff") on September 18, 2006 to work at one of its pizza carry-out restaurants. On November 13, 2006, Plaintiff slipped in water on the restaurant's floor, and fell. Plaintiff immediately stood up, but noticed ten minutes later that her right elbow, lower back and right side began to hurt. She asked her shift manager for an incident report form to record her fall and injuries. Plaintiff worked the remainder of her shift, and then walked home. Plaintiff telephoned the restaurant the next morning, November 14, and told the unidentified answering employee that she was unable to work that day. Plaintiff went to Morton Clinic and saw an unidentified physician, who prescribed hydrocodone, a narcotic pain relief medication.

Plaintiff and Defendant disagree whether Plaintiff reported for work on Wednesday, November 15, 2006. Plaintiff alleges she reported for work that day, but requested permission to

leave early without completing her shift because of pain and the hydrocodone side effects. Defendant alleges Plaintiff was scheduled on that Wednesday, but never reported to work. Defendant alleges Plaintiff next reported to work on Thursday, November 16, when she left early, working only 4.76 hours because of pain and hydrocodone-induced drowsiness. Plaintiff called the restaurant on Monday and Tuesday, November 20 and 21, to report she could not work those days. On November 21, Plaintiff saw a chiropractor, who told her to "kind of relax," presumably for pain relief.

Later on November 21, Plaintiff went to the restaurant to pick up a pizza she ordered. Another of Defendant's employees, "Michelle," asked Plaintiff why her name was not on the work schedule and why the store manager, Billy Johnson ("Johnson"), said Plaintiff was fired. Plaintiff alleges that, on her return home, she called Johnson to ask if she had been fired. Plaintiff alleges Johnson answered, "Well, I didn't know what was going on with you. I didn't know if you were ever going to come back." Plaintiff alleges she told Johnson that she was undergoing chiropractic treatment. Johnson indicated another person was needed to perform Plaintiff's duties. The parties disagree about how many telephone conversations Plaintiff and Johnson had. Plaintiff does not dispute she told her shift manager, Jason Podgorsky ("Podgorsky"), that she could no longer work and would advise him if that changed. Plaintiff also does not dispute that Podgorsky informed her he needed to find someone to perform her duties.

The parties generally agree that Plaintiff sought legal advice on or around December 6, 2006. At some later date Plaintiff filed a Worker's Compensation claim with Defendant's insurer, who denied that claim on March 27, 2007. Plaintiff originally brought this action in the Oklahoma state district court on April 20, 2007, asserting a claim for wrongful termination in violation of

Oklahoma's Workers Compensation law, Okla. Stat. tit. 85 §5.  Defendant removed the action to this Court on June 11, 2008, on grounds of diversity.

## II.     Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted).  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III.    Discussion

Defendant brings this motion contending that Plaintiff cannot prove any set of facts to show that Defendant terminated her employment, and/or that any such termination was motivated by Plaintiff's filing of a Worker's Compensation action. Defendant thus contends that Plaintiff can show no facts to support her action for retaliatory discharge under Oklahoma's Worker's Compensation statute, Okla. Stat. tit. 85,§5A.

Plaintiff must show the following elements of a *prima facie* case for retaliatory discharge under §5(A) of the Oklahoma Workers Compensation Act: (1) employment, (2) on-the-job injury, (3) either a receipt of medical treatment under circumstances which should  put the employer on

3

notice that treatment had been rendered for a work-related injury, or that the employee initiated or caused to be initiated proceedings under the Worker's Compensation Act, and (4) a consequent termination. *Buckner v. General Motors Corp.*, 760 P.2d 803, 806 (Okla. 1988). The first two elements are not in dispute.

Defendant argues Plaintiff cannot meet the fourth element, because no evidence shows that Defendant actually terminated Plaintiff's employment. Both parties rely on Plaintiff's deposition testimony of a telephone conversation with Johnson, on November 21, 2006. Plaintiff described that conversation as follows:

> A. The first time I called in, they answered the phone and then he [Johnson] wouldn't come to the phone. The second time I called, it was about –
> Q. The same day?
> A. The same day, and then the second time I called, he got to the phone and he – he said "Hello" and then that was it. So I called back and he said he had to take another call. Then I called again, a fourth time, and then nobody answered, so I went to the chiro – I went to the chiropractor, and then I came back and that's when I got the pizza and I found out that – again that they [Michelle] said that [I was fired]. So I asked, I said, "What – what about my job? What's going on?" you know,--
> Q. The same day?
> A. Yeah.
> Q. Okay.
> A. And so I said, "What's going on?" and he was like, "Well, I didn't know what was going on with you. I didn't know if you were ever going to come back." I said I called every day to tell you that I wasn't going to work and I wasn't going to be able to work, and he was like, well, I told you I would call – I said I would call you after I get from the chiropractor and tell you what happened, what's going on with that and what's wrong. And so he was like, "Well, I didn't know what was going on." I said, "Well, they're telling me that I don't have a job." I said, "The least you could do is tell me or" --
> Q. Now, who was telling you you didn't have a job?
> A. The first girl, her name is Michelle, who told me that – that I didn't have a job.
> * * *
> A. And then when I talked to him, he – wouldn't say it at first, but they had already hired somebody, and I said, "Well, you knew I wasn't

4

>           going to come back. Why didn't you just say that when I talked to
>           you before?" Or Jason [Plaintiff's shift manager] didn't tell me
>           when I came up there, and so he was like, "It's not my" – and then
>           he told me it's not his responsibility. I said, "I live – you know
>           where I live, you have my address. You could send a letter or send it
>           by somebody else." He said he didn't have time for that. And so I
>           was like, "Well, the least you could do is tell me I don't have a job
>           because I have bills, too, so what am I going to do now?" He said
>           it wasn't his responsibility.
> Q.       Okay, he didn't tell you you didn't have a job, --
> A.       No.

(Carter Dep. 35:24-37:21.) Defendant relies on Plaintiff's admission that Johnson did not expressly tell her that she was fired. In response, Plaintiff argues that because Johnson did not contradict her statements that she had been fired, she was in fact terminated from Defendant's employ.

Even if the Court were to find a genuine issue of fact as to whether Defendant terminated Plaintiff's employment, that finding does not end the Court's inquiry as to whether Plaintiff has shown a *prima facie* case under §5(A) of Oklahoma's Workers Compensation Act. To show a "consequent termination" of employment, Plaintiff is required to produce evidence that gives rise to the legal inference that her termination was significantly motivated by retaliation for filing a worker's compensation claim. *Wallace v. Halliburton Co.*, 850 P.2d 1056, 1059 (Okla. 1993). An employee may meet that requirement by "showing a pattern of termination of workers who filed claims, or of pressure put on workers not to file claims." *Taylor v. Cache Creek Nursing Centers*, 891 P.2d 607, 610 (Okla. Civ. App. 1994). Plaintiff has not presented any such evidence of a pattern of terminations, or that Defendant pressured its employees not to file Worker's Compensation claims.

In *Buckner*, the Oklahoma Supreme Court indicated that the employee's termination must be "consequent" to the employee's receiving medical treatment under circumstances which puts

the employer on notice that treatment had been rendered for a work-related injury. Alternatively, the termination should occur after the employer was put on notice that the employee in good faith instituted, or caused to be instituted, proceedings under the Worker's Compensation Act. 760 P.2d at 806. In explaining what would put the employer on such notice, the Oklahoma Supreme Court stated:

> Merely seeking and receiving first aid is not in and of itself sufficient to institute proceedings. Some other evidence sufficient to persuade the trier of fact that the worker intended or reasonably could have intended to institute proceedings is necessary. . . . First aid coupled with circumstances which raise a clear inference of an anticipated claim must be present before the institution of proceedings is triggered.

*Id.* at 811. While Plaintiff sat down for a few minutes after her fall, and then resumed work, she did not request first aid from Defendant. Plaintiff did not request Defendant to provide any other medical treatment to her. Plaintiff does not allege she told Defendant about her visit to Morton Clinic the day after her fall. Plaintiff testified that she told other employees, and then Johnson, that she was going to a chiropractor, and would let Johnson know what the chiropractor thought "was wrong." However, since Plaintiff thereafter did not communicate with Johnson or any other of Defendant's employees, Defendant could not have had any knowledge of whether the chiropractor thought anything "was wrong" with Plaintiff. The Court must look at this evidence "as it existed *at the time of the medical treatment and termination." Barber v. Payless Cashways, Inc.,* 787 P.2d 1301, 1303 (Okla. Civ. App. 1990)(emphasis original). If it is accepted that Plaintiff was terminated on November 21, 2006, after her conversation with Johnson, the evidence Plaintiff presents of her medical treatment as of that date did not sufficiently put Defendant on notice that Plaintiff would be filing a Worker's Compensation claim against it.

The sequence of events and communications in this case is similar to that in *Barber*. There, the employee notified his employer that he was receiving medical treatment and could not come to work. Like Plaintiff, he did not ask his employer to provide medical treatment. Barber was subsequently terminated. After his termination, he thought about filing a Worker's Compensation claim, and later consulted an attorney for that purpose. Similarly, Plaintiff alleged that she did not think about filing a claim until after her alleged termination on November 21, and she did not consult an attorney until two weeks later, on or about December 6, 2006. Plaintiff has not shown any evidence to suggest that when Defendant allegedly terminated her employment, Defendant was aware of "circumstances . . . which would lead a reasonable employer to infer that a workers compensation claim would in all probability ensue. . . ." *Id*. As with *Barber*'s grant of summary judgment for the employer, the Court finds the "facts in this case fall short of being sufficient to justify this Court to find [Plaintiff] stated a prima facie case." *Id*.

Plaintiff has not presented any evidence from which it can be inferred that her alleged termination on November 21, 2006 was in retaliation for Plaintiff's future Worker's Compensation claim. An employee's "own unsupported speculation" about the cause for her termination is "insufficient to put [the employer's] motives in issue." *Bishop v. Hale-Halsell Co.*, 800 P.2d 232, 235 (Okla. 1990). Similarly, when the reasons for the employee's discharge "could only be deduced by pure speculation," that evidence "could not support the presentation of the matter to a jury." *Thompson v. Medley Material Handling Inc.*, 732 P.2d 461, 464 (Okla. 1987). Accordingly, for the reasons outlined above, the Court grants summary judgment for Defendant as to Plaintiffs' claim for retaliatory discharge in violation of Oklahoma's Worker's Compensation statute, Okla. Stat. tit. 85,§5A.

On April 4, 2008, Plaintiff filed a Motion to File a Supplemental Response to Defendant's Motion for Summary Judgment. (Doc. 31). Plaintiff attaches to her Motion a copy of an March 27, 2008 Order entered in the Oklahoma Worker's Compensation Court, which found Plaintiff temporarily totally disabled for the period from November 13, 2006 to May 7, 2007. The Court finds that this Order from the Worker's Compensation Court does not show that Defendant terminated Plaintiff's employment in retaliation for the Worker's Compensation claim she filed after the alleged termination. Accordingly, Plaintiff's Motion to File a Supplemental Response to Defendant's Motion for Summary Judgment (Doc. 31) is DENIED.

Defendant's Motion for Summary Judgment (Doc. 15) is GRANTED in its entirety. A Judgment will be entered by separate Order.

**ORDERED this 7th day of April, 2008.**

_____
**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**